IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DESMOND ERIC WARREN, | ) | CASE NO. 1:17CV813 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| RONALD ERDOS, *Warden*, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Desmond Eric Warren ("Petitioner" or "Warren") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Warren is detained at the Southern Ohio Correctional Facility, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of trafficking in persons, compelling prostitution, and three counts of promoting prostitution, along with one human trafficking specification.  *State v. Warren*, Case No. CR-14-585539-A (Cuyahoga Cty. Common Pleas Ct., filed October 6, 2014).  At sentencing, the trial court merged the trafficking in persons and compelling prostitution counts, sentenced him to 14 years for trafficking in persons, and 12 months for each promoting prostitution count, all to be served concurrently, for a total of 14 years in prison.  Doc. 6-1, p. 36.

On April 17, 2017, Warren filed his Petition for Writ of Habeas Corpus setting forth three grounds for relief.  Doc. 1, pp. 5-8.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Grounds 1 and 2 are procedurally defaulted and Ground 3 fails on the merits.  Thus, the

undersigned recommends that Warren's Petition for Writ of Habeas Corpus (Doc. 4) be

**DISMISSED in part** and **DENIED in part**.[1]

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga

County Court of Appeals, Eighth Appellate District of Ohio:[2]

> {¶ 3} Detective Jim Scullin of the Westlake Police Department testified that Shawna
> Lowder was arrested for prostitution in June 2013 as a result of a prostitution sting at a
> local hotel. Lowder provided a fictitious name and was again arrested by Westlake police
> in January 2014. After the latter arrest, Lowder claimed a medical condition while in jail
> and was furloughed to St. John's Westshore Hospital for medical treatment. When she did
> not return to jail from the hospital, Scullin prepared a criminal complaint charging her
> with escape.

> {¶ 4} Scullin tracked Lowder's cellular phone number to an advertisement posted
> onBackpage.com and, posing as a prospective client, arranged to meet her at a hotel in
> North Olmsted. Police found Lowder and another woman, Stephanie Dzugan, in two
> unlocked adjoining rooms at the hotel. Inside one of the rooms police found photos of
> Dzugan and Warren as well as men's clothing, drug paraphernalia and a condom. Dzugan
> was found to be in possession of $907.

> {¶ 5} Warren appeared at the hotel an hour or two after police arrested Lowder and
> Dzugan. Although Warren claimed he was coming to visit a friend, he could not provide
> a name or room number. Warren was arrested at that time and found to be in possession
> of two cell phones and $555.

---

[1]  The grounds in the petition that are procedurally defaulted result in a dismissal; the ground in the petition that is
addressed on the merits results in denial.

[2]  Warren has not demonstrated by clear and convincing evidence that the state court's findings were incorrect.
Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d
at 397.

{¶ 6} Alexis Williams testified that she was married to Warren. Williams described in detail Warren's role as a pimp in a scheme where she, Stephanie Dzugan, Asiacashe Terry and Shawna Lowder operated as prostitutes. Warren would choose a hotel and have Williams use her identification to obtain rooms. The women would post prostitution advertisements on the websiteBackpage.com and, after obtaining money in exchange for sex, the women would give the money to Warren. The amount of money to be charged for the prostitution services was dictated by Warren.

{¶ 7} Although Williams maintained that she could have refused her role in the prostitution operation, she detailed Warren's method of manipulating the women involved in the prostitution scheme. This "pimp control" was described by Williams as follows:

> It's like making a woman feel like she's number one and that you need her and that you love her, and also putting fear in her by if she's not doing what you want her to do, by either hitting her or taking that attention and love away and giving it to someone else.

{¶ 8} Williams testified that Warren used this manipulation on her. Despite their marriage, Warren wanted her to work as a prostitute and once she began prostituting for him he began to refer to her as a "b* * * * " and a "ho." Williams testified that Warren would slap her, hit her, call her names and later, make love to her. This abuse would sometimes occur when they were alone and other times when the other women were present.

{¶ 9} Williams described an incident at a park with her children present where a man sat near her. Warren didn't want her sitting near other men and, because she disobeyed him, he punched her. Later, she tried to leave their home but he punched, kicked and choked her before tying her up in their basement.

{¶ 10} Williams testified that Warren slapped another one of his prostitutes, Shawna Lowder, when some money was missing. Williams also testified that Lowder was a heroin addict and Warren would provide her with heroin and marijuana.

{¶ 11} Warren brought prostitutes into their home to live with their family but if the women weren't working as prostitutes they were not allowed to stay in the home. Williams stated that she would collect money from the other prostitutes and provide it to Warren. This included social security checks that belonged to Asiacashe Terry.

{¶ 12} Asiacashe Terry testified that she met Warren in January 2013 at a bus stop in Cuyahoga County. She was 18 years old at the time and had no place to live. Warren took her to his home and offered to let her stay with his family. Warren did not initially ask for anything in return but two to three days later Warren brought Terry to a hotel in Beachwood and left her with a prostitute named "London." London explained to Terry that Warren was a pimp and that she was to call him "Daddy." Terry learned the process of posting prostitution advertisements onBackpage.com and testified:

        * * * after she told me, I kind of just gave in to it because I just thought about, well, if I decide to leave, I'm going to be back in the situation that I was in before he picked me up.

{¶ 13} London took pictures of Terry and posted her first advertisement toBackpage.com. After the posting, London called Warren to provide him an update. London screened Terry's calls responding to theBackpage.com advertisement and collected the money she earned from engaging in sexual conduct with clients.

{¶ 14} Terry testified that Warren decided how much money was to be charged for the prostitution services. Terry stated that she became a prostitute for Warren and in return, her needs were met: she had a place to live and was provided anything she wanted or needed as long as she was willing to prostitute. Warren made Terry give him the money she earned for prostitution as well as her social security benefits. Warren made Terry travel to Washington D.C. to prostitute. Terry testified that she felt she had to do what he told her to do.

{¶ 15} Terry testified that Warren made her feel like he cared about her and that she was important to him. At the same time, Warren had a set of rules and that if she broke a rule she would be hit or yelled at by Warren. Warren had a "no sightseeing rule" whereby Terry was not allowed to look at another male unless it was for money. When she broke this rule Warren struck her in the face with the back of his hand. Terry described another instance where Warren slapped her in the kitchen of his home.

{¶ 16} Terry stated that, of all the prostitutes working for Warren, Williams received the worst treatment. Warren was quick to beat Williams. Terry testified that anything Williams did wrong would result in her being beaten. Watching Warren beat Williams made Terry feel scared and concerned that if she made a mistake she would be beaten like Williams. Terry was also scared from watching Warren beat London. Terry testified that she had sex with Warren for the first time about a week after he brought her to his home. She didn't want to have sex with him but didn't tell him "no."

{¶ 17} Terry testified that she feared Warren because she had witnessed how he had treated other girls and she was afraid that he would beat her. Warren told her stories about things that he had done to other girls that tried to leave him including putting a prostitute in the trunk of his car and beating and injuring her with a metal broomstick. Terry testified that Warren laughed while telling her these stories.

{¶ 18} Terry tried to leave Warren three times but always ended up returning because she was "stuck" due to the fact that Warren did not give her any of the money she earned from prostituting, he possessed her birth certificate and social security card and her social security checks were being sent to his home. She returned to Warren because she needed to and had no other options:

        [H]e took everything from me, to the point where if I left, I would have to come back because I needed him so much.

{¶ 19} In April 2013, Terry contacted law enforcement and told them she was a victim of human trafficking. She met with Detective John Morgan in Cleveland and was "sent to California." When she returned to Cleveland in January 2014, Warren appeared at her house and, despite her protestations, assumed that she would continue working for him and told her to call him when she had $500 for him.

{¶ 20} Shawna Lowder testified that she met Warren in Cleveland in 2012 or 2013 through a prostitution advertisement she posted toBackpage.com. At the time she had a warrant for her arrest in Erie County for burglary, was addicted to vicodin and opana and was homeless. She and Warren decided that she would start working for him selling sex throughBackpage.com. Lowder testified that at the time she felt like Warren saved her life.

{¶ 21} Warren took her to a hotel in North Olmsted where she began working as a prostitute. Warren decided the prices she was to charge for prostitution. She would give all of her money to Warren and he would provide her with food, clothing and drugs.

{¶ 22} When Warren couldn't provide her with vicodin and opana, he introduced her to heroin. Lowder testified that she "wanted it" the first time. Lowder testified that as her addiction to heroin grew she would feel physically ill if she didn't have it. In turn, she would have to make money for Warren in order for him to provide heroin to her.

{¶ 23} Lowder worked for Warren for a year and a half to two years. Lowder testified that she worked all day, every day, servicing between two and twelve "johns" per day. Lowder testified that Warren had common sense rules such as not looking at other pimps, giving all the money to him and not being disrespectful. Lowder called Warren "Daddy." Once, when she was caught not providing Warren with all the money she had earned, he smacked her in the face.

{¶ 24} Lowder testified that it was her choice to engage in prostitution; however, if she got into trouble with Warren it would affect the amount of heroin she was receiving. Lowder testified that she needed the heroin, was desperate to buy it and a lack of heroin would make her work harder to obtain more money for it.

{¶ 25} Lowder described the events leading up to her January 2014 arrest for prostitution with Stephanie Dzugan and Warren at a La Quinta Inn in Independence. Her arrest was made possible by her need to obtain heroin and willingness to take risks despite sensing a police sting operation.

{¶ 26} Stephanie Dzugan met Warren when she was 17 years old. She had discovered the practice of prostituting throughBackpage.com advertisements prior to meeting Warren. Dzugan was present at the La Quinta Inn in January 2014 when she was arrested with Lowder. She testified that she was holding onto Lowder's money to keep it secure. Dzugan admitted to expressing feelings of love to Warren.

{¶ 27} Detective John Morgan testified to his detailed experience in law enforcement activities involving prostitution and human trafficking. He explained the concept of

"pimp control" whereby a pimp fills a void in a prostitute's life. He also explained that young prostitutes learn the rules of the prostitution game from a "bottom b* * * * " who has been with the trafficker the longest. This prostitute may take a beating in front of the other girls in order to instill fear into them.

{¶ 28} Morgan began following the internet postings of Alexis Williams after meeting Asiacashe Terry in 2013. He eventually set up a sting operation at the La Quinta Inn in North Olmsted that resulted in the arrests of Lowder, Dzugan and Warren.

{¶ 29} Warren testified in his defense and admitted to being involved in prostitution but claimed he merely accepted money from prostitutes rather than forcing them to give him money. He denied forcing the prostitutes to work. He admitted that he bought heroin for Lowder but denied pushing her to become dependent on it.

*State v. Warren*, 2015 WL 5309433, at ** 1-4 (Ohio Ct. App. Sept. 10, 2015).

### 2. Procedural History

On May 23, 2014, a Cuyahoga County Grand Jury issued an indictment charging Warren with one count of Trafficking in Persons, R.C. 2905.32(A) (Count 1); one count of Corrupting Another with Drugs, R.C. 2925.02(A)(2) (Count 2); three counts of Compelling Prostitution, R.C. 2907.21(A)(1), each count containing a Human Trafficking Specification, R.C. 2941.1422(A) (Counts 3, 4, 5); and three counts of Promoting Prostitution, R.C. 2907.22(A)(2), two of which contained a Human Trafficking Specification, R.C. 2941.1422(A) (Counts 6, 7, 8). Doc. 6-1, pp. 4-8.  Warren, through counsel, pleaded not guilty.  Doc. 6-1, p. 9.

The jury found Warren guilty of Trafficking in Persons (Count 1), one count of Compelling Prostitution (Count 4), three counts of Promoting Prostitution (Counts 6, 7, 8), and one Human Trafficking Specification (attached to Count 7).  Doc. 6-1, p. 30.  At sentencing, the trial court merged the trafficking in persons and compelling prostitution counts, sentenced him to 14 years for trafficking in persons, and 12 months for each promoting prostitution count, all to be served concurrently, for a total of 14 years in prison.  Doc. 6-1, p. 36.

### B. Direct Appeal

6

Warren, through new counsel, appealed to Ohio Court of Appeals.  Doc. 6-1, p. 38.  In his brief, he raised the following assignments of error:

> 1. The Trial Court erred to Mr. Warren's prejudice by entering a verdict of guilty of trafficking in persons, which sufficient evidence did not support, in derogation of Mr. Warren's right to due process of law under the Fourteenth Amendment of the United States Constitution.
>
> 2. The Trial Court erred to Mr. Warren's prejudice by entering a verdict of guilty of trafficking in persons against the manifest weight of the evidence, in derogation of Mr. Warren's right to due process of law under the Fourteenth Amendment of the United States Constitution.
>
> 3. The Trial Court erred to Mr. Warren's prejudice by entering a verdict of guilty of compelling prostitution, which sufficient evidence did not support, in derogation of Mr. Warren's right to due process of law under the Fourteenth Amendment of the United States Constitution.
>
> 4. The Trial Court erred to Mr. Warren's prejudice by entering verdict of guilty of compelling prostitution against the manifest weight of the evidence, in derogation of Mr. Warren's right to due process of law under the Fourteenth Amendment of the United States Constitution.

Doc. 6-1, p. 42.  On September 10, 2015, the Ohio Court of Appeals affirmed the trial court's judgment.  Doc. 6-1, pp. 116-134.

On October 23, 2015, Warren, pro se, appealed to the Ohio Supreme Court.  Doc. 6-1, p. 135.  In his memorandum in support of jurisdiction, he raised the following propositions of law:

> I. The State of Ohio presented insufficient evidence to convict Appellant of Human Trafficking and Compelling Prostitution.
>
> II. The manifest weight of the evidence failed to support Appellant's convictions for Human Trafficking and Compelling Prostitution.
>
> III. Appellant received ineffective assistance of appellate counsel.

Doc. 6-1, pp. 138.  On February 24, 2016, the Ohio Supreme Court declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 6-1, p. 172.

**C. Application for Reopening under Ohio App. R. 26(B)**

While his appeal to the Supreme Court of Ohio was pending, Warren, through new

counsel, filed an Application for Reopening under Ohio App. R. 26(B).  Doc. 6-1, p. 174.  He

argued that his counsel on direct appeal was ineffective for not raising the following claims:

> 1. The trial court committed plain error in instructing the jury on human trafficking and compelling prostitution without defining the word "compel," by providing an incomplete instruction on the elements of "compelling prostitution," and then later giving a definition of "compel" that substantially and prejudicially deviated from the statutory definition.
>
> 2. Defense counsel provided ineffective assistance of counsel allowing instruction to the jury on human trafficking and compelling prostitution without defining the word "compel," by providing an incomplete instruction on the elements of "compelling prostitution," and then later giving a definition of "compel" that substantially and prejudicially deviated from the statutory definition.

Doc. 6-1, p. 176.  On May 3, 2016, the Ohio Court of Appeals denied Warren's application.

Doc. 6-1, pp. 205, 207-208.

On June 14, 2016, Warren, through counsel, appealed to the Ohio Supreme Court.  Doc.

6-1, p. 209.  In his memorandum in support of jurisdiction, he raised the following proposition of

law:

> I. The failure to define an element of an offense at trial, "compel" in the context of human trafficking and compelling prostitution, and failure of both trial and appellate counsel to raise such an issue creates a genuine issue sufficient to warrant full appellate review under App. R. 26(B).

Doc. 6-1, p. 212.  On August 31, 2016, the Ohio Supreme Court declined to accept jurisdiction

of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 6-1, p. 261.

**D. Federal Habeas Petition**

On April 17, 2017, Warren, through counsel, filed his Petition for a Writ of Habeas

Corpus.  Doc. 1.  He listed the following grounds for relief:

> **<u>Ground One</u>**: Defense Counsel provided constitutionally ineffective assistance at trial by failing to properly instruct the jury on the elements of the offense of Trafficking in Persons and Compelling Prostitution.

**Supporting facts**: Trial Counsel failed to include the statutory definition of "Compel" as it applies to Trafficking in Persons, omitting the statutory definition from the jury instructions and leaving "coerced" in its place. Counsel also failed to ensure that the instruction was complete. In parts of the jury instruction, the jury was not instructed to find each element of Trafficking in Persons. During deliberations, the jury asked for a definition of "Compel" and did not receive the statutory definition. Instead, the Trial Court provided a substantially incorrect definition that lowered the State's burden of proof. The same errors in failing to define the word "compel" prejudicially affected the instruction on Compelling Prostitution. Each error lowered the burden of proof and thus cause[d] constitutional, prejudicial error.

**Ground Two**: Trial Court committed constitutional, plain error in failing to provide proper instruction on elements of Trafficking in Persons and Compelling Prostitution.

**Supporting facts**: The Trial Court failed to include the statutory definition of "Compel" as it applies to Trafficking in Persons, omitting the statutory definition from the jury instructions and leaving "coerced" in its place. The court also failed to ensure that the instruction was complete. In parts of the jury instruction, the jury was not instructed to find each element of Trafficking in Persons. During deliberations, the jury asked for a definition of "Compel" and did not receive the statutory definition. Instead, the Trial Court provided a substantially incorrect definition that lowered the State's burden of proof. The same errors in failing to define the word "compel" prejudicially affected the instruction on Compelling Prostitution. Each error lowered the burden of proof and thus cause[d] constitutional, prejudicial error.

**Ground Three**: Appellate counsel provided constitutionally ineffective assistance by failing to raise issues on appeal.

**Supporting facts**: Appellate counsel provided constitutionally ineffective assistance by failing to raise issues on appeal that would otherwise cause reversal on direct appeal, namely the issues raised in grounds one and two of this petition.

Doc. 1, pp. 5-8. On July 7, 2017, Respondent filed a Return of Writ (Doc. 6) and, on August 21, 2017, Warren filed a Traverse (Doc. 7).

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."

*Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural

10

rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review.**  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary

12

to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

Although Warren presents an argument in support of "consolidated grounds for relief" in his Traverse combining all his claims (Doc. 7, p. 9), each ground, while related, is separate and involves different procedural considerations.  Thus, the Court considers each ground in turn.

#### A. Ground 1 is procedurally defaulted

In Ground 1, Warren argues that trial counsel was ineffective for failing to object to the jury instructions given for trafficking in persons and compelling prostitution, which included the definition of "coerce" instead of "compel."  Doc. 1, p. 5.  He also contends that the jury was not instructed to find each element of trafficking in persons and that, during deliberations, the jury asked for a definition of "compel" and received a substantially incorrect definition that lowered the state's burden of proof.  Doc. 1, p. 5.  Ground 1 is procedurally defaulted because it was based on the trial court record and, therefore, should have been raised on direct appeal.  *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016) (in Ohio, ineffective assistance of trial counsel

13

claims based on evidence within the trial court record must be brought on direct appeal); *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967). Because it was not, and state law no longer allows Warren to present it, his claim is procedurally defaulted. *See Hill*, 842 F.3d at 936. Although Warren, in his Rule 26(B) Application, raised an ineffective assistance of appellate counsel claim for failing to raise ineffective assistance of trial counsel on direct appeal, this did not preserve the underlying ineffective assistance of trial counsel claim. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct[,]'" quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)).

To demonstrate cause to excuse his procedural default, Warren argues that appellate counsel was ineffective for failing to raise this claim on direct appeal. Doc. 7, p. 18. This argument fails for reasons discussed in Ground 3, below. Warren does not present new evidence showing that he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326-327 (1995) (to demonstrate a miscarriage of justice to overcome a procedural bar a petitioner must show that he is actually innocence); *House v. Bell*, 547 U.S. 518, 537 (2006) (evidence of innocence to overcome a procedural bar must be "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."); *Hodges v. Colson*, 727 F.3d 517, 532 (6th Cir. 2013). Ground 1 is procedurally defaulted.

**B. Ground 2 is procedurally defaulted**

In Ground 2, Warren argues that the trial court committed constitutional error when it failed to include the statutory definition of "compel" as it applies to trafficking in persons, omitting it from the statutory definition and using "coerced" instead. Doc. 1, p. 7. He also

14

contends that the jury was not instructed to find each element of trafficking in persons and that, during deliberations, the jury asked for a definition of "compel" and received a substantially incorrect definition that lowered the state's burden of proof.  Doc. 1, p. 7.

Ground 2 is procedurally defaulted because Warren did not present this claim on direct appeal, as he was required to do.  *See Hill*, 842 F.3d at 936 (6th Cir. 2016); *Perry*, 226 N.E.2d at 108.  For the same reasons explained above, the fact that Warren included this claim as a reason appellate counsel was ineffective in his Rule 26(B) Application does not preserve it.  *See Davie*, 547 F.3d at 312.  Warren alleges cause to excuse his procedural default as ineffective assistance of appellate counsel, which fails for the reasons explained in Ground 3, below.  He does not show actual innocence.  Ground 2 is procedurally defaulted.

### C. Ground 3 fails on the merits

In Ground 3, Warren argues that appellate counsel was ineffective for failing to raise, on direct appeal, the issues presented in Grounds 1 and 2: to wit, that the trial court erred by giving erroneous jury instructions and that trial counsel was ineffective for failing to object to the instructions.  Warren presented this issue to the Ohio Court of Appeals in his Rule 26(B) Application to Reopen.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of appellate counsel claims.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  A petitioner must show that appellate counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, he would have prevailed on his appeal.  *Id*. (citing *Strickland*, 466 U.S. at 687-691, 694).  Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeals' decision on the merits of that claim, under AEDPA.  *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th

Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 134 S.Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

### 1. The Ohio Court of Appeals' decisions

In rejecting Warren's Rule 26(B) Application, the Ohio Court of Appeals set forth the *Strickland* standard and explained,

> {¶ 7} Warren, through his two proposed assignments of error, argues that "[t]he Trial Court, the State, and Defense Counsel failed to properly instruct the jury of the definition of 'compel' as statutorily defined. There is a genuine issue as to whether this failure amounted to plain error, such that it lowered the standard of proof for conviction on counts of Compelling Prostitution and Human Trafficking, of which [Warren] was found guilty."

> {¶ 8} Crim.R. 30(A) provides that, on appeal, an appellant may not assign as error the giving or failure to give any jury instructions unless the appellant objected before the jury retired to consider its verdict. The failure to timely object waives all but plain error. *State v. Moore*, 163 Ohio App.3d 23, 2005–Ohio–4531, 836 N.E.2d 18; *State v. Thompson*, 2nd Dist. Montgomery No. 22984, 2010–Ohio–1680. To be considered plain error, the error must be obvious on the record, palpable, and fundamental, so that the error should have been apparent to the trial court without objection. *State v. Tichon*, 102 Ohio App.3d 758, 658 N.E.2d 16 (1995). Plain error does not exist unless the appellant can establish that the outcome of his trial would have clearly been different but for the trial court's alleged improper actions. *State v. Waddell*, 75 Ohio St.3d 163, 661 N.E.2d 1043 (1996). Notice of plain error must be taken with the utmost caution, only under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643 (1995).

> {¶ 9} Warren did not object to the trial court's jury instruction thus waiving any error on appeal. In addition, Warren cannot establish that the outcome of his trial would have been different had the trial court instructed the jury as now suggested. In fact, this court upon appeal specifically found that Warren's convictions for the offenses of compelling prostitution and trafficking in persons were supported by sufficient evidence and not against the manifest weight of the evidence. This court found that each and every essential element of the offenses of compelling prostitution and trafficking in persons, including the element of "compelled," proven beyond a reasonable doubt. *Warren*, *supra*, at ¶ 38, 41, and 45. This court further found that Warren's convictions for the offenses of compelling prostitution and trafficking in persons were not against the manifest weight of the evidence. *Id*. at ¶ 51 and 53. Warren cannot establish the existence of any miscarriage of justice and, thus, has failed to establish the existence of any ineffective assistance of appellate counsel. *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015–Ohio–1550; *State v. Stewart*, 8th Dist. Cuyahoga No. 93428, 2011–Ohio–1667.

16

{¶ 10} It is also well settled that appellate counsel is not required to raise and argue assignments of error that are meritless. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel cannot be considered ineffective for failing to raise every conceivable assignment of error on appeal. *Jones v. Barnes*, *supra*; *State v. Gumm*, 73 Ohio St.3d 413, 653 N.E.2d 253 (1995); *State v. Campbell*, 69 Ohio St.3d 38, 630 N.E.2d 339 (1994).

*State v. Warren*, 2016 WL 2586655, at **1-2 (Oh. Ct. App. May 6, 2016).  In other words, the Ohio Court of Appeals considered whether appellate counsel was ineffective by applying plain error review to the underlying claim because that is the standard that would have been applied to the claim on direct appeal.  When applying plain error review, the Ohio Court of Appeals concluded that Warren did not establish that the outcome of his trial clearly would have been different.  It relied on its prior decision, on direct appeal, wherein it rejected Warren's claims that his convictions were not supported by the sufficiency of the evidence and were against the manifest weight of the evidence.  That prior opinion reasoned,

{¶ 32} Warren presents four assignments of error that we address out of order for ease of discussion. In his first and third assignments of error Warren argues that the evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that he was guilty of trafficking in persons and compelling prostitution.

{¶ 33} This court has said that, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011–Ohio–100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997–Ohio–52, 678 N.E.2d 541. The relevant inquiry then is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 34} Warren was convicted of trafficking in persons in violation of R.C. 2905.32 and compelling prostitution in violation of R.C. 2907.21. The trafficking in persons statute provides in relevant part:

(A) No person shall knowingly recruit, lure, entice, isolate, harbor, transport, provide, obtain, or maintain, or knowingly attempt to recruit, lure, entice, isolate, harbor, transport, provide, obtain, or maintain, another person if any of the following applies:

17

(1) The offender knows that the other person will be subjected to involuntary servitude or be compelled to engage in sexual activity for hire * * *.

R.C. 2905.32.

{¶ 35} The state maintains that the term "compelled" should be defined to include "coercion." This is an important distinction because if the act of compelling were defined to include "coercion" the breadth of conduct encapsulated by "compel" would be significantly expanded. To illustrate the point, we cite the following passage from *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), wherein the Ohio Supreme Court examined the difference between "duress" that is unquestionably incorporated into the definition of "compel," and "coercion":

> The words "coercion" and "duress" are not synonymous, although their meanings often shade into one another. "Duress" generally carries the idea of compulsion, either by means of actual physical force or threatened physical force applied to the person (or to some near relative of the person) to be influenced, or applied to the property or reputation of such person. "Coercion" may include a compulsion brought about by moral force or in some other manner with or without physical force. * * * Coercion has been found in a wife's refusal to return to her husband and resume marital relations * * *, and in an employer's warning to striking workers that if they did not return to work by a certain day their jobs would be filled.

> These judicial definitions of coercion correspond to the common use of the word. Webster's Third New International Dictionary defines coercion as "the act of coercing: use of physical or moral force to compel to act or assent," and to coerce as "to restrain, control or dominate, nullifying individual will or desire (as by force, power, violence, or intimidation)."

> The essential characteristic of coercion which emerges from these definitions is that force, threat of force, strong persuasion or domination by another, necessitous circumstances, or some combination of those, has overcome the mind or volition of the defendant so that he acted other than he ordinarily would have acted in the absence of those influences. (Internal citations omitted.)

*Woods* at 136–137, overruled in part on other grounds, *State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977).

{¶ 36} The state's suggestion to include "coercion" as part of the "compelled" element of trafficking in persons is based on cases that interpreted the term "compel" as it was used in other offenses where the term was not statutorily defined. For example, in *State v. Watson*, 8th Dist. Cuyahoga No. 90962, 2009–Ohio–2120, this court noted that the term compel, as used in the offense of compelling prostitution, was not defined in the statute or the Ohio Revised Code at the time. In *Watson*, this court defined the term compel by relying on legislative committee comments to R.C. 2907.21 that provided that "the compulsion used may be force or threat of force, duress, or coercion of any kind."

18

Importantly, we note that in 2011 the legislature amended R.C. 2907.21 to define the element of "compelled" and remove "coercion" as part of that definition.

{¶ 37} As with the amended version of compelling prostitution, for the purposes of trafficking in persons we need not look beyond the statute for guidance in defining the element of "compelled." R.C. 2905.32(B) states:

> (B) For a prosecution under division (A)(1) of this section, the element "compelled" does not require that the compulsion be openly displayed or physically exerted. The element "compelled" has been established if the state proves that the victim's will was overcome by force, fear, duress, intimidation, or fraud.

{¶ 38} In this instance the state presented sufficient evidence that Warren recruited and maintained prostitutes with knowledge that they would be compelled to engage in sexual activity for hire. The record details a systemic use of force, fear, duress and intimidation in Warren's prostitution scheme. Alexis Williams stated that Warren relied upon manipulation and fear of physical force to control the women. The testimony established that Warren would often beat Williams as an example to instill fear into the other women. Williams also used physical force on both Lowder and Terry to force them to comply with his rules.

{¶ 39} Asiacashe Terry testified that she became completely reliant upon Warren such that she became "stuck." Warren provided for all of her day-to-day needs and was receiving her social security check. If she did not prostitute for Warren she would be back out on the street. Williams' testimony corroborated this fact: if the women weren't working as prostitutes they were not allowed to stay in Warren's home. Terry also described the fear instilled in her from watching Warren beat Williams and listening to Warren describe physically abusing other prostitutes that tried to leave him.

{¶ 40} Finally, Lowder described how Warren enabled her increasing drug addiction in exchange for working as a prostitute for him. Warren introduced Lowder to heroin and manipulated her physical dependence on the drug to accomplish his will. In fact, it was Lowder's desperation to make money to obtain heroin from Warren that led to the downfall of Warren's prostitution ring.

{¶ 41} On these facts, we find that the state presented sufficient evidence to support Warren's conviction for trafficking in persons.

{¶ 42} Warren also argues that his conviction for compelling prostitution was not supported by sufficient evidence. R .C. 2907.21(A)(1) defines compelling prostitution as follows:

> (A) No person shall knowingly do any of the following:
> (1) Compel another to engage in sexual activity for hire;
> * * *

19

(B) For a prosecution under division (A)(1) of this section, the element "compel" does not require that the compulsion be openly displayed or physically exerted. The element "compel" has been established if the state proves that the victim's will was overcome by force, fear, duress, or intimidation.

{¶ 43} We again note that R.C. 2907.21 was amended in 2011 to provide a statutory definition for the term "compel" in section (B) which supersedes the definition this court provided in *State v. Watson*, 8th Dist. Cuyahoga No. 90962, 2009–Ohio–2120.

{¶ 44} Consistent with our analysis above, the testimony established Warren introduced Lowder to heroin and manipulated her drug addiction to motivate her to engage in prostitution in order to provide him with money in exchange for heroin. Furthermore, Williams testified that Warren exerted physical violence on Lowder when she was missing prostitution-related money. Lowder's testimony confirmed that Williams struck her for withholding money. Lowder's compliance with Warren's rules was accomplished both by his control of her heroin supply as well as physical violence.

{¶ 45} We find that the state presented sufficient evidence to support Warren's conviction for compelling prostitution.

{¶ 46} Warren's first and third assignments of error are overruled.

*Warren*, 2015 WL 5309433, at **5-7.  The Ohio Court of Appeals went on to explain why it rejected Warren's manifest weight of the evidence claims.  *Id.*, at **7-9.

In sum, the Ohio Court of Appeals had found that there was sufficient evidence for a jury to find Warren guilty of trafficking in persons and compelling prostitution based on the statutory definition of "compel"; thus, when ruling on Warren's Rule 26(B) Application, the Ohio Court of Appeals determined that Warren could not show that the outcome of his trial clearly would have been different had the jury instruction used the statutory definition of the word "compel."

### 2. Warren's challenges in his Petition and Traverse

In his Traverse, Warren sets forth case law describing the standard for reviewing constitutional errors but does not advocate for a particular standard to be applied.  Doc. 7, pp. 10-11.  He appears to concede that the Ohio Court of Appeals properly applied plain error review on the underlying issue when deciding whether appellate counsel was ineffective.  Doc. 7, p. 11.

Warren contends that the jury instructions given at trial lowered the state's burden of proof.  He argues that "compel" carries a higher burden of proof than "coerce" does, and, therefore, the trial court committed constitutional error when (without defense counsel's objection) it substituted the word "coerce" for "compel."  Doc. 7, pp. 9, 11.  As an initial matter, Warren's assertion that the Ohio Court of Appeals found that "the concept of 'coercion' was a less burdensome standard" than compel is not supported by the record.  The Ohio Court of Appeals discussed the differences between the two but did not conclude that one was more burdensome than the other.

Warren does not explain how the Ohio Court of Appeals' decision was unreasonable, as he is required to do to prevail per AEDPA.  Instead, he merely asserts that the Ohio Court of Appeals' reasoning when ruling on his Rule 26(B) Application was "unsound"; states that if the jury instruction was wrong the sufficiency of the evidence is "meaningless"; and concludes that the Ohio Court of Appeals "did not properly construe either [Warren's] argument or the law."  Doc. 7, p. 17.  Importantly, Warren's ground for relief in his Petition is ineffective assistance of appellate counsel for failing to raise the issue on direct appeal, i.e., he must show that the Ohio Court of Appeals' decision that appellate counsel was not ineffective "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

First, the Ohio Court of Appeals' reasoning when it ruled on his Rule 26(B) Application was not "unsound" because it applied the correct legal standard (*Strickland v. Washington*) to Warren's ineffective assistance of counsel claims and the correct legal standard (plain error) to the underlying basis for his ineffective assistance claim, i.e., that an un-objected-to error occurred at trial because an incorrect jury instructions was given.  The Ohio Court of Appeals reasoned that the outcome of his trial would not have clearly been different (plain error standard)

21

if the trial court had given the jury instructions advocated by Warren.  It observed that, on direct appeal, it had found sufficient evidence to convict Warren based on the definition of "compel" advanced by Warren.  *Warren*, 2016 WL 2586655, at *2.  Thus, any improper jury instruction argument on appeal would have failed and appellate counsel was not ineffective for failing to raise a meritless issue on direct appeal.  *Id*.

Warren focuses his argument on the Ohio Court of Appeals' finding that the outcome of his trial would not have been different had the trial court instructed the jury as Warren suggested. He contends that, if the jury instruction at trial was wrong, the sufficiency of the evidence is "meaningless."  Doc. 7, p. 17.  He states that an incorrect jury instruction is a structural error necessitating a new trial.  Doc. 7, p. 2.  He does not provide United States Supreme Court precedent holding that an improper jury instruction necessitates a new trial and case law indicates otherwise.  *See Johnson v. United States*, 520 U.S. 461, 466 (1997) (rejecting the plaintiff's contention an un-objected-to jury instruction is a structural error and plain error review does not apply; "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure [regarding plain error].")[3]; *Walker v. Lazaroff*, 2015 WL 4984868, at *14 (N.D.Ohio Aug. 18, 2015) (rejecting the petitioner's contention that incorrect jury instructions that purportedly shifted the burden of proof at trial constituted structural error).  The Ohio Court of Appeals' finding that sufficient evidence in the record supported Warren's convictions was not "meaningless" because Ohio state courts consider whether the record evidence presented at trial established the defendant's guilt.  *See, e.g., State v. Wamsley*, 884 N.E.2d 45, 49 (Ohio 2008) ("an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of

---

[3]  Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.") is similar to Ohio Crim. R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

justice has occurred as a result of the error in the instructions."); *State v. Wamsley*, 2009-Ohio-1858, 2009 WL 1059653, at *6 (Oh. Ct. App. Apr. 16, 2009) (in applying plain error review after the Ohio Supreme Court's reversal, discussing whether sufficient evidence was presented at trial to support a finding that all the elements of the crime were met when the trial court failed to instruct the jury on all elements of the crime); *State v. Sanders*, 750 N.E.2d 90, 117 (Ohio 2001) (considering a challenge to erroneous jury instructions and concluding, "it is far from clear that a differently instructed jury would have acquitted Sanders of these crimes, and no plain error exists here[,]" citing *State v. Long*, 372 N.E.2d 804 (Ohio 1978)); *State v. Knight*, 78 N.E.3d 1267, 1272-1273 (Oh. Ct. App. 2016) (concluding, on plain error review, that the outcome at trial would not have been different had the proper jury instruction defining "substantially impaired" been given because the evidence presented at trial showed substantial impairment); *State v. Byrd*, 1980 WL 352572, at **4-6 (Oh. Ct. App. Dec. 12, 1980) (in applying plain error to erroneous jury instructions omitting the *mens rea* element and a necessary definition in the charged offense, finding that the evidence presented at trial established the defendant's guilt as to all elements of the crime charged, citing *Long*.).  Here, the Ohio Court of Appeals, in rejecting Warren's Rule 26(B) Application, remarked that it had previously, on direct appeal, found sufficient evidence in the record to support a conviction for trafficking in persons and compelling prostitution based on the statutory definition of compel.  Warren does not identify United States Supreme Court precedent that applies to the facts of his case and would instruct that the Ohio Court of Appeals' decision was unreasonable.  *See White v. Woodall*, 134 S.Ct. 1697, 1706 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no "'fairminded disagreement' on the question." (quoting *Harrington*, 562 U.S. at 103)).

Finally, Warren argues that there was evidence at trial that could have supported a finding that the women voluntarily joined Warren's prostitution operation and, therefore, were not compelled by Warren. Doc. 7, pp. 14-15. This argument challenges the Ohio Court of Appeals' finding that there was sufficient evidence to find Warren guilty of trafficking in persons and compelling prostitution. However, Warren did not raise a sufficiency of the evidence as a ground for relief in his habeas petition. The Ohio Court of Appeals' factual determinations are binding on this Court absent clear and convincing evidence, which Warren does not provide. *See Burt,* 134 S.Ct. at 15 (Under AEDPA, "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]'" citing 28 U.S.C. § 2254(d)(2)). Moreover, although Warren cites to evidence in the record in support of his position that he did not compel Lowder to prostitute (Doc. 7, p. 15), the Ohio Court of Appeals cited evidence showing that Warren did compel Lowder to prostitute. *Warren*, 2015 WL 5309433, at *4, 6-7 (detailing how Warren hit Lowder when she did not give him all the money she earned, i.e., used physical force to ensure she complied with his rules, and introduced her to heroin and used her heroin addiction to control her). Although Warren cites to evidence in the record in support of his position that he did not compel Terry to prostitute (Doc. 7, p. 14), the Ohio Court of Appeals cited evidence showing that he did. *Warren*, 2015 WL 5309433, at *3, 6-7 (explaining that Warren beat Williams to instill fear in the other women; told Terry that he had physically abused other prostitutes who had tried to leave him; used force upon Terry; kept Terry's birth certificate and social security checks that were sent to his home while Terry lived there and after Terry had left, causing her to return to him because she had no money and no other options; and provided

women a home and other necessities so long as they prostituted).  The Ohio Court of Appeals'

factual determination that Warren compelled Terry and Lowder to prostitute was reasonable.

In sum, it cannot be said that it is so obvious that a clearly established rule applies to the

facts in Warren's case such that there could be no fairminded disagreement that the Ohio Court

of Appeals' *Strickland* analysis of Warren's ineffective assistance of appellate counsel claim was

unreasonable.  *White*, 134 S.Ct. at 1706.  Therefore, Ground 3 fails, and it cannot constitute

cause to excuse the procedural default of Grounds 1 and 2.

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Warren's habeas Petition

be **DISMISSED in part** and **DENIED in part** because Grounds 1 and 2 are procedurally

defaulted and Ground 3 fails on the merits.

Dated: April 5, 2018

_____
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after the party objecting has been served with a copy of this Report and
Recommendation.  Failure to file objections within the specified time may waive the right to
appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see
also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

25